IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

REPUBLIC-FRANKLIN INSURANCE COMPANY,

                Plaintiffs,

v.

DONAT INSURANCE SERVICES, LLC,

                Defendant.

OPINION AND ORDER

20-cv-875-wmc

---

Plaintiff Republican-Franklin Insurance Co. ("RFIC"), a reinsurance provider, brings this declaratory judgment action to ratify its recission of coverage under the specter of defendant's misrepresentations about its insurance portfolio of purportedly haunted attractions, which have already summoned forth some third-party underwriters claims. As an insurance agency itself, defendant Donat Insurance Services, LLC ("Donat") stands mute as to the underlying question of recission; rather, it asserts that none of the still uncertain litigation scenarios have ripened into a constitutionally judiciable case or controversy. Now before the court is defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) failure to state a claim. For the reasons set forth below, defendant's motion to dismiss will be granted.

BACKGROUND[1]

The sole defendant in this case, Donat, is an insurance agency that contracts with

---

[1] For the purposes of this motion, the court will construe all of defendant's factual allegations as true and draw all reasonable inferences in its favor. Fed. R. Civ. P. 12(b)(6); *Savory v. Lyons*, 469

multiple underwriters to provide coverage to its clients through third-party insurance brokers. (Notices of Claims., Ex. I-L (dkt. #1-9 through 1-12).) In some instances, Donat determines what insurance is needed, meaning it may be responsible for choosing a policy that is suitable for their clients, including providing needed coverage. (Compl. (dkt. #1) ¶¶ 2, 8.) As a result, Donat may face claims (and ultimately even incur liability) for any mistakes. Thus, Donat insures itself against this risk through an errors and omissions policy. (*Id.*)

For example, Donat sold an allegedly ill-suited insurance policy for a haunted barge that sank on October 31, 2014, resulting in a claim against Donat's errors and omissions insurer. (*Id.* ¶ 11.) Similarly, in 2016, Donat insured "Shocktoberfest," a festival that included a hayride. (*Id.* ¶ 19.) Although Donat procured insurance appropriate for hayrides pulled by tractors, Shocktoberfest used trucks to pull their hayride. (*Id.* ¶ 21.) When the hayride later crashed into a barn resulting in injuries, a lawsuit was brought against Shocktoberfest, but its insurer denied coverage on the basis that the festival lacked an appropriate *automotive* insurance policy. (*Id.*) An insurance claim against the driver's automotive policy was also denied.[2] (Notice of Claim., Ex. H (dkt. #1-8).) As a result, Shocktoberfest's counsel expressly advised Donat to inform its errors and omissions insurer

---

F.3d 667, 670 (7th Cir. 2006). Moreover, this court may consider exhibits attached to a complaint as part of the pleadings, on a motion to dismiss. *See Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) (citing *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988); Fed. R. Civ. P. 10(c)).

[2] The vehicle pulling the hayride was an uninsured "property only" farm truck, but the employee-driver had a personal automotive insurance policy. (Notice of Claim., Ex. G (dkt. #1-7).)

about the incident. (*Id.* ¶ 23.) Despite the possibility of such claims, plaintiff RFIC contracted to provide Donat with *retroactive* errors and omissions insurance coverage ("E&O") in 2019, implicating several of these preceding events.

Indeed, in addition to the haunted barge and Shocktoberfest incidents, RFIC is now aware of injuries at four, additional attractions ("the four miscellaneous injuries") -- three that Donat was aware of before signed the contract for E&O insurance, and one that it only became aware of after signing the insurance contract. (Compl. (dkt. #1) ¶¶ 25-28.) Demands for compensation arising from various slide and zip-line injuries appear present in two of these instances, but these demands are directed to attractions or their insurance underwriters. (Notices of Claims., Ex. I-L (dkt. #1-9 through 1-12).) Critically, none of these incidents have yet matured into demands or allegations of wrongdoing against Donat nor a claim for coverage against RFIC -- the only parties before this court. (*Id.*)

Among other considerations, RFIC determines claims risk and premiums based on past behavior. To learn of past behavior, RFIC asks its applicants about past E&O claims, circumstances which may mature into such claims, and instances where agency funds were used to pay claims (the latter presumably to learn of errors and omissions that were not claimed against a policy). (*Id.* ¶¶ 10-13.) From this information, RFIC estimates the risk of ongoing and future claims. (Ins. Policy., Ex. B (dkt. #1-2) 2.) On or about November 19, 2019, Donat completed an application with RFIC. (Compl. (dkt. #1) ¶ 8.) In response to these questions, Donat only disclosed the haunted barge claim but failed to disclose any other incidents, *including* Shocktoberfest. (*Id.* ¶¶ 10-13.)

On or around November 21, 2019, allegedly based on the false assertions and knowing omissions in the application, RFIC issued to Donat an errors and omissions policy ("the E&O Policy"). (*Id.* ¶ 16.) The E&O Policy effectively insured Donat against certain errors and omissions for claims raised between February 25, 2012, and April 26, 2021.³ (Ins. Policy., Ex. B (dkt. #1-2).) The E&O Policy defines a claim as "a written demand or written notice, including service of a subpoena, "suit" or demand for arbitration, received by [Donat] which alleges a "wrongful act" or asks for money or services." (*Id*. at 16.) But for the allegedly fraudulent omission of the Shocktoberfest incident on Donat's application, RFIC alleges it would not have issued the EO policy at any price. (Compl. (dkt. #1) ¶¶ 25-28.) Although Donat is alleged to have borne some expense for attorneys' fees in the Shocktoberfest case, such fees are not covered under the EO policy unless approved by RFIC. (*Id.* ¶ 2; (Ins. Policy., Ex. B (dkt. #1-2) 16, 18).) No allegation has been made that such an approval was made or requested.

On or about August 10, 2020, Donat provided notice of the Shocktober incident, and the four miscellaneous injuries which had not proceeded to litigation.⁴ (Compl. (dkt. #1) ¶¶ 24-28). Upon receipt of the notice, RFIC promptly returned all premiums, and

---

³ The policy period runs from February 25, 2020, through February 25, 2021, but a 60-day automatic extended reporting period effectively extends the policy term forward, and a retroactive date declaration effectively extends the policy term backwards. The policy further provides that it will not apply to any loss for which a claim is made after the expiration of the policy period or the extended reporting period. (Ins. Policy (dkt. #1-2) 3.)

⁴ Although not included in the complaint, defendant represents in its brief that Mr. Donat, the sole owner of Donat Insurance, passed away on May 2, 2020. (Def.'s Mot. to Dismiss (dkt. #8) 1). Donat was acquired by its present ownership shortly before providing this notice, on June 30, 2020. (*Id.* at 2.)

4

declared the policy void *ab initio*, purportedly relieving RFIC of any duty to "defend or indemnify Donat in any lawsuit brought by any current or future, known or unknown claimant." (*Id.* ¶¶ 36-38.) RFIC now seeks to confirm their recission in federal court, notwithstanding defendant's protestations of a lack of standing.

OPINION

At the outset, every claim brought in federal court must present a genuine "case or controversy," defined as "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance" of relief. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Actions for declaratory judgment pursuant to 28 U.S.C. § 2201 are permitted under this standard, but only if they "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

Some tension is to be expected between insurance companies and this standing doctrine. Federal courts are not in the business of litigating the "hypothetical" or "speculative" until they have ripened into "concrete and imminent" harms of "sufficient immediacy and reality." *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Insurance companies, on the other hand, traffic in risk: speculative, hypothetical harms are their bread and butter. To the extent that standing is a constitutional limit on the jurisdiction of this court, however, special dispensation is neither available for a plaintiff's chosen business model, nor for its desire to know its future obligations.

5

Accordingly, defendant Donat asks the court to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) for failure to state a true "case or controversy," and thus, to invoke this court's subject matter jurisdiction properly. Specifically, defendant argues that since "no claims have been actually filed against Donat for which the policy may even potentially be applicable," the declaration sought by plaintiff is premature. (Def.'s Mot. to Dismiss (dkt. #8) 1.) Defendant relies on *United States v. Wausau Chem. Corp.*, No. 87-C-919-C, 1989 WL 168839 (W.D. Wis. June 12, 1989), to support his argument. In that case, Maryland Casualty Company, an insurance provider, requested a declaratory judgment confirming that it was not required to defend or indemnify defendants if in the future it was called upon to do so. *Id.* at *2-3. Judge Crabb declined to enter the requested declaration, concluding that no actual controversy existed in the absence of pending or immediately threatened actions. *Id.*

As in *Wausau Chemical*, no claim or suit has been filed against either party presently before this court. However, unlike in that case, plaintiff here alleges that it would have never issued the policy in the first place but for Donat's numerous, material ommissions. Given these allegations, the court is not prepared to conclude on the limited, pleaded facts that no actual case or controversy currently exists between the parties. *See Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 791 (W.D. Wis. 2019) (standing established where plaintiffs alleged that but for defendant's misrepresentations, they would not have been exposed to a risk of identity theft). Still, "even where a case presents an actual controversy, a court may refuse to grant declaratory relief for prudential reasons." *Alcan Aluminium Ltd. v. Dep't of Rev. of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984).

Here, because the only relief requested by plaintiff is declaratory, this case is governed by the Declaratory Judgment Act, which gives the district court discretion to declare the rights of litigants. 28 U.S.C. § 2201(a). Given the particular facts of this case, the court is hesitant to proceed with litigation because no claim has yet been made against defendant *Donat* in the first instance, let alone plaintiff RFIC. Moreover, the universe of claims is now closed, with no hint from either party that a claim has ever been filed. One of the goals of the Declaratory Judgment Act is to promote the "efficient resolution of disputes." *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). Issuing a declaration, after the devotion of both judicial and party resources, that would provide no concrete benefit to either party is not an efficient way to proceed. Nevertheless, this dismissal will be without prejudice, and plaintiff remains free to seek reopening of this case should the underlying facts advance to a point where plaintiff is threatened with a more concrete harm.

## ORDER

IT IS ORDERED that defendant's motion to dismiss (dkt. #8) is GRANTED, and plaintiff's complaint is dismissed without prejudice.

Entered this 4th day of August, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge